### KING et v KIMMEL et

Ohio Appeals, 2nd Dist, Montgomery Co

No 1081.   Decided Jan 19, 1932

McMahon, Corwin, Landis & Markham, Dayton, for plaintiffs in error.

Murphy & Murphy, Dayton, for defendants in error.

HORNBECK, J.

The errors asserted in this court will be considered as presented in the brief of counsel for plaintiffs in error. 1. There was no contract of employment. 2. If there was a valid contract of lease it was not to be binding until security was deposited. 3. Plaintiffs had not performed. 4. Amendment to §8621 GC is a bar to consideration of cause of action of plaintiffs.

Briefly, it is the claim of plaintiffs that they acted for and on behalf of defendants. That they negotiated with the Fenway Company and brought the Fenway Company and defendants together by the execution of a perpetual lease for certain real estate owned by defendants in the City of Dayton.

In 1923, Mr. Kelley, of the Fenway Company, was interested in securing a site in Dayton upon which to erect an apartment hotel building similar to Fenway Hall, which the company had theretofore erected in Cleveland. It is claimed by plaintiffs that the property, for which the lease was afterward executed, owned by defendants, was first under consideration as a site for the apartment hotel; that thereafter what is known as the Thacker property was purchased. Following the purchase of the Thacker property the Fenway Company was interested in acquiring defendants' property as an investment, and thus arose the negotiations leading up to the contract which plaintiffs claim they have performed and upon compliance with which they assert liability of defendants.

There is sharp conflict in the testimony of plaintiffs and defendant, King, respecting the capacity in which the Kimmels, father and son, were acting as real estate dealers in the transaction between the defendants and the Fenway Company. Both the Kimmels insist that they were solicited by Mr. King to assist in leasing his property to the Fenway people. Mr. Kimmel, Sr., in his deposition says that Mr. King came to his, Kimmel's, office and specifically sought his services as real estate agent to procure the Fenway Co. to lease his property and at that time they discussed the question of commission. That Mr. Kimmel said to Mr. King that he would expect to be paid the customary commission fixed by the Real Estate Board of Dayton.

Mr. King is just as definite and decisive to the effert that he was solicited by the Kimmels. That he at no time prior to the agreement to pay $2000 commission, if the deal went through to his satisfaction, had agreed to pay any commission. On the contrary, that he had definitely informed the Kimmels that he would pay none, and further, that it was understood that the Kimmel commission would come from the Fenway Company.

The record likewise discloses the sharpest line of cleavage respecting the terms of the contract which the Kimmels undertook to perform for the parties. It is the claim of plaintiffs that the Fenway Company, in the first instance, offered defendants $100,000.00 as a basis for rentals under the lease. That at the beginning of negotiations there was some mention made of a cash deposit of $20,000 to secure performance by the Fenway Co., that after the very earliest negotiations nothing further was said about a cash deposit nor about a bond. Thereafter, through successive offers of the Fenway Co. the amount was raised to $120,000, that eventually the valuation upon which lessee was to pay was raised to $125,000 and that the increase in the amount was tacitly, at least, understood to obviate the necessity of any bond to secure the acceptance of the terms of the lease and the payment of rentals. This claim is supported by the express testimony of the Kimmels, Mr. Kelley and Mr. Young of the Fenway Company, and favorable inference to plaintiffs may be drawn from the fact that no mention is made in plaintiffs' Exhibit A (which set forth certain particulars of the lease) relating to a cash deposit or bond.

To the contrary, Mr. King insists that during the greater part of the negotiations he never waivered from his basic demand that there be a cash deposit to secure compliance with the terms of the lease. Later, and prior to the execution of the lease, it is admitted by Mr. King and testified to by Judge O. B. Brown that there was a modification of a cash demand, but that it was a condition precedent to the delivery of the

executed lease that a bond should be given by the Fenway Company guaranteeing compliance with the terms of the lease to the satisfaction of the defendants.

Here is found the fundamental difference in the claims of the parties. Plaintiffs asserting that at the time of the execution of the lease the minds of the parties met upon a contract, that it was completed and executed, that the demand for a bond came after the execution of the lease and had no part in the contract which plaintiffs brought about. That, having brought to defendants a lessee who was able, ready and willing to perform the contract upon which they had agreed, viz, the terms as set forth in the lease, full compliance with their contract had been made by the plaintiffs.

This is a proceeding in error and we are required to support the record if it can be done. It is obvious from what has been heretofore stated, and from the record in its entirety, that there was a complete difference between the facts as stated by plaintiffs' witnesses and those as claimed by the defendants.

The trial court had a right to believe, under all the circumstances, that the testimony of the plaintiffs was more probable than that of the defendants. Granting to the trial court that discretion, we cannot say he erred either in determining that the plaintiffs had complied with their contract or in holding that they were to be paid the customary real estate commission.

If compelled to rely entirely upon the testimony of Mr. Kimmel, Jr., we would have much difficulty in finding that in any event the defendants agreed to pay more than $2,000.00 commission. But Mr. Kimmel, Sr., in his deposition is definite to the effect that at the inception of the contract Mr. King was apprised of the fact that he would be required to pay the customary real estate commission and if the trial court gave credence to this testimony, which he had a right to do, he is supported in his judgment by the record. If this contract was as claimed by Mr. Kimmel, Sr., then the subsequent agreement to pay $2,000.00 would have been in the nature of an offer of compromise of the original amount due, from the view point of plaintiffs, conditioned upon the prompt payment of the sum of $2,000.00 upon the execution of the lease. Defendants failing to observe the terms of the compromise plaintiffs would have the right to fall back upon the original contract.

Without further considering the details of the testimony, though we realize that the disputed questions are close, and had we the power to pass upon them originally we might come to a different conclusion than the trial court, we cannot say that the court erred in any one of these particulars heretofore considered.

We come then to the final question in the case, viz, the effect of §8621 GC. The section, so far as is pertinent, reads:

"No action shall be brought whereby to charge the defendant * * * upon an agreement, promise or contract to pay any commission for or upon the sale of an interest in real estate * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized."

The amendment to the section which is germane to our question was made in 1925.

The contract upon which the plaintiffs sue was made in 1923. This action was instituted October 26, 1926.

It is the claim of defendants that the section bars the plaintiffs from seeking any relief in the courts. It is the claim of the plaintiffs that they had a substantive right of action against the defendants prior to the amendment and that because of §26 GC, §8621 GC, expressing no purpose to effect plaintiffs' cause of action, is not effective to bar them in the instant case. §26, GC, so far as is pertinent, reads:

"Whenever a statute is repealed or amended * * * and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions or proceedings, unless so expressed, nor shall any repeal or amendment affect causes of such action, prosecution or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

We recognize that a vested right of action is property under the Constitution which is protected against arbitrary interference, likewise the constitutional inhibition against retroactive laws does not apply to remedial acts. 8 **Ohio Jurisprudence, Par. 428.**

Counsel for plaintiffs concede that in part the statute of frauds may be classed as remedial legislation, but insist that their cause of action having arisen prior to the enactment of the amendment to §8621 GC

it is not effective as a bar until the statute of limitations has operated to prevent the institution of the action in the courts.

The application of the amendment to §8621 GC cannot in the instant case be said to operate as an arbitrary interference with the right of the plaintiffs to invoke their remedy on the oral contract, because 90 days elapsed between the enactment of the law and its becoming effective, and more than a year elapsed between the time when the right of action to plaintiffs accrued and the date when the amendment to §8621 GC became effective. Lamb v Powder River Livestock Co., 132 Fed., 442.

We are of opinion that our question is determined by two cases in Ohio from the Court of last resort. 1—**Heaton v Eldridge & Higgins, 56 Oh St, 87,** establishes the statute of frauds as an act which relates exclusively to the remedy. The question presented arose upon an attempt to set up a defense of money claimed to be due for damages for the breach of an oral contract which could not be performed within a year. The alleged contract was made in Pennsylvania and could have been enforced there. Plaintiffs action having been instituted in Ohio, the statute of frauds was interposed to bar the defense of the oral contract. The brief of Mr. Owen for defendant in error parallels in particulars the contention of plaintiffs in the instant case.—Levoux v Brown, 12 Com. B 801, approved and followed in the opinion of the court, was criticized in the following language, at page 95:

"The comprehensive and far reaching fallacy of Levoux v Brown, lies in its assumption that the statute of frauds, which provides that no action shall be brought upon such contract, unless, etc., is a mere rule of evidence relating to remedy and procedure, and that it does not at all affect the validity, the obligation or the contractual vitality of a contract. It is radically unlike the statute of limitations which a State may extend or curtail at pleasure, without being subjected to the imputation of impairing the obligation of the contract involved."

Judge Williams, writing the opinion at page 98, says:

"So that, the solution of the question presented involves the inquiry whether the provision of the statute above quoted appertains to the remedy on contracts to which it refers, or goes to their validity. We have found no expression on the ques-

tion by this court, though it has been the subject of repeated adjudications both in England, and in several of the States."

The court then considers and approves Levoux v Brown, supra, and says at the bottom of page 99 that:

"The two sections of the statute which were under consideration prescribe rules of evidence which courts wherever the remedy is sought are required to observe."

And at page 100:

"The views of Judge Storey were brought to the attention of the court in Levoux v Brown, and in an edition of his work published after that case was decided, a section was added, in which it is said that the statute of frauds is, like the statute of limitations, a matter affecting the remedy merely."

Heaton v Eldridge & Higgins, having definitely fixed the statute of frauds as relating to the remedy only, it thus must be classified with statutes of limitation, which also relate exclusively to the remedy.

We then proceed to our second case which is decisive on the narrow question here presented, viz, whether the amendment to the statute operates to bar a cause of action which had arisen prior to the enactment of the amendment. In **Smith v N. Y. C. Rd. Co., 122 Oh St, 45,** the amendment, §11224 GC had been enacted May 4, 1927, and reduced from four to two years the limitation on the time within which actions for damages for personal injuries caused by negligence could be brought. Chief Justice Marshall, writing the opinion, tersely states the question presented in the first sentence.

"The sole question for determination in both of these controversies is whether the amendment of §11224 GC reducing the period within which personal injury suits may be brought from four to two years, will apply to causes of action existing at the time of the effective date of the enactment. Neither of the controversies was a pending suit at the time of such effective date, and both controversies were existing causes of action on that date."

At page 55:

"In the instant case for the first time, there has been brought in this court the question of the applicability of a remedial

amendment to an existing cause of action which had not been brought at the time the amendment went in to effect."

The opinion is exhaustive, thoroughly considers the theory of a vested right in a cause of action, to what extent it may be invaded by remedial legislation, the application of §26 GC and concludes that the amendment under consideration was effective to bar the actions under consideration. The syllabus of the case is directly in point and in our judgment decisive of our question.

The many other cases cited are helpful on principle, but with the exception of two, **Hart v Conger Helper Realty Co., 8 Abs 76, Rottman v Wernsing, 26 Oh Ap, 383 (6 Abs 305)**, do not reach our specific question, because the contracts involved were not completed until after the effective date of the amendment under consideration. **Brenner et v Spiegle, 116 Oh St, 631,** illustrates the distinction. **Cramer, Inc. v Patterson, 25 Oh Ap, 130, (4 Abs 783), Hornback v S. Paper Company, 27 Oh Ap, 329, (5 Abs 298), Burnstine v Resler, 29 Oh Ap, 253,** are like unto Brenner v Spiegle in the facts presented. All of these cases support the theory that the statute of frauds is remedial legislation. In Cramer v Patterson, supra, the court at page 134 states a hypothetical case wherein it is assumed that there was an existing oral contract between the parties prior to the passage of the amendment, and clearly and unmistakably expresses the opinion that it would be controlled by the statute. This conclusion is carried in one of the paragraphs of the syllabus.

**Schoenl v The Warner White Co., 32 Oh Ap, 59, (6 Abs 563),** holds that the statute of frauds, §8621 GC, as amended in 1925 is remedial in its nature, and is effective against a suit to enforce an oral contract for the sale of land on commission commenced after said amendment became operative. It is true, as contended by plaintiffs, that the cause of action under consideration by the court in the Schoenl case did not arise until after the effective date of the amendment. But the theory of the opinion leads to the conclusion that the court believed that the statute was effective to bar an action upon oral contract for real estate sale commission without respect to the date when the cause of action arose. The Supreme Court refused to certify this case.

**Hart v Conger Helper Realty Co., supra,** opinion by Judge Sherick is respectable authority in support of our conclusion

in a case wherein the facts were parallel. The case of Cliff v Seligman and Latz, U. S. District Court, Northern, though reversed because the statute had no application, 38 Fed. (2d) 179, District, Eastern Division is strong authority relating to the effective date of a statute limitations §11224 GC.

Rottman v Wernsing, supra, considers without the facts requiring it the immediate question here under consideration. Having held that the statute of frauds could not be considered as a defense because not set up the court discusses the effect had it been plead and concludes that a cause of action for real estate commission accruing before the enactment of the amendment to §8621 GC would not be affected. This latter part of the decision is obiter.

Other cases some of which have been called to our attention which reflect indirectly upon our question are **Westerman v Westerman, 25 Oh St, 500; John v Bridgman, 27 Oh St, 23, Warner v B. & O. R. R. Co,. 31 Oh St, 265; Elder v Shoffstall, 90 Oh St, 265, Ward v Swartz, 25 Oh Ap, 175, (6 Abs 60), State ex Campbell v Ballard, 3 Oh Ap, 44, Templeton v Kramer, 24 Oh St, 554, Rairden v Holden, 15 Oh St, 207.**

We therefore hold that the amendment to §8621 GC is controlling in the instant case and operates to bar plaintiffs' recovery on their oral contract for commission for the sale of an interest in real estate.

Judgment accordingly. Cause reversed.

ALLREAD, PJ, and KUNKLE, J, concur.